◼ MARILYN JUMP, Respondent, v THOMAS FACELLE et al., Defendants, and JANIS PASTENA et al., Appellants. [739 NYS2d 730] —In an action to recover damages for medical malpractice, etc., the defendants Janis Pastena and Janis Pastena, P.C., appeal from so much of a judgment of the Supreme Court, Rockland County (Sherwood, J.), dated January 12, 2001, as, upon a jury verdict finding that the plaintiff had sustained damages of $1,300,000 for past pain and suffering and $250,000 for wrongful death, and upon an order of the same court dated September 28, 2000, denying their motion to set aside the verdict on the ground that the amount of damages awarded was excessive, is in favor of the plaintiff and against them.

Ordered that the notice of appeal from the order dated September 28, 2000, is deemed a premature notice of appeal from the judgment (*see,* CPLR 5520 [c]); and it is further,

Ordered that the judgment is modified, on the facts and as an exercise of discretion, by deleting the provision thereof awarding the plaintiff damages in the sum of $250,000 for wrongful death and granting a new trial with respect thereto; as so modified, the judgment is affirmed insofar as appealed from, with costs payable to the appellants, unless within 30 days after service upon the plaintiff of a copy of this decision and order, the plaintiff shall serve and file in the office of the Clerk of the Supreme Court, Rockland County, a written stipulation consenting to reduce the verdict as to damages for wrongful death from the sum of $250,000 to the sum of $140,000, and to the entry of an amended judgment accordingly; in the event the plaintiff so stipulates, then the judgment, as so reduced and amended, is affirmed insofar as appealed from, without costs or disbursements.

On July 18, 1991, the decedent, William Jump, was diagnosed with colorectal cancer by the defendant Dr. George Robert Cox. On August 8, 1991, he was admitted to the defendant Good Samaritan Hospital where he underwent a lower anterior resection and anastomosis. The surgery, which involved remov-

ing the cancerous tumor from Mr. Jump's colon and attaching the remaining healthy tissue of the colon to the remaining healthy tissue of the rectum, was performed by the defendants Drs. Thomas Facelle and Mandel Ganchrow, shareholders in the defendant Ramapo Valley Surgical Associates, P.C. According to Dr. Cox, before the surgery, Mr. Jump was in excellent health and had a life expectancy of approximately 14 years.

In the days following the surgery, Mr. Jump suffered from a fever, an elevated white blood cell count, and other symptoms related to infection and that are common following major abdominal surgery. However, on August 18, 1991, at approximately 8:00 P.M., Mr. Jump informed the nurse on duty that he felt something "pop" in his stomach, and a large amount of stool poured from the surgical incision. The nurse notified the defendant Dr. Janis Pastena, the on-call surgeon for Ramapo Valley Surgical Associates, who examined Mr. Jump at approximately 9:30 P.M. and determined that immediate surgery was not necessary.

Dr. Ganchrow examined Mr. Jump the next morning, and he determined that the anastomosis, or attachment between the colon and the rectum, had torn, and ordered surgery to repair the tear, insert a temporary colostomy, and position drains in the area of Jump's rectum to control infection. However, Jump's infection persisted. From the time of the initial surgery until his death, Jump remained hospitalized. He continued to suffer from abdominal infections, mental confusion, and hallucinations. In addition, he lost the ability to walk, and it was painful for him to sit upright in a chair. He underwent eight major surgeries in total, including the insertion of a permanent colostomy. He developed a bedsore on his lower back that did not heal, and had to be scraped and cleaned repeatedly, which eventually infected his spine. According to Mr. Jump's wife, the colostomy bag would sometimes open, and Mr. Jump's room always smelled like feces. On March 29, 1992, Mr. Jump passed away, not from cancer, but due to complications secondary to the abdominal infection. Mr. Jump received a pension of $10,000 per year that he contributed to the household, which ceased at the time of his death.

At trial, the jury determined that Dr. Pastena committed medical malpractice in not operating on Mr. Jump immediately after she discovered fecal leakage on the night of August 18, 1991, and awarded the plaintiff damages in the amount of $1,300,000 for past pain and suffering and $250,000 for wrongful death. Dr. Pastena and her professional corporation appeal.

In evaluating whether an assessment of damages is exces-

sive, this Court must determine whether it deviates materially from what would be reasonable compensation (*see,* CPLR 5501 [c]; *Olsen v Burns,* 267 AD2d 366). Considering the nature of the pain and suffering endured by the plaintiff's decedent for the eight months that he was hospitalized prior to his death, including the persistent abdominal infection, the numerous surgeries, the permanent colostomy, and the bedsore, the damages awarded for past pain and suffering were reasonable.

However, we find that the $250,000 award for wrongful death was excessive to the extent indicated. The only economic loss established with reasonable certainty was the loss of the decedent's pension, which equaled $140,000 ($10,000 per year × 14-year life expectancy). Prudenti, P.J., Smith, Goldstein and McGinity, JJ., concur.